Thank both of you. Thank you, Your Honors. And we'll move to our third case of the morning, which is No. 21-3336, William Groves v. South Bend Community School System. May it please the Court, my name is Nick Otis, and I represent the Plaintiff Appellant, William Groves. Mr. Groves is appealing a district court's decision granting summary judgment to the South Bend Community School Corporation on Mr. Groves' claims. Mr. Groves alleges he was discriminated against based on his race when he was passed over by the School for the Corporation Director of Athletics position in 2017 and the Dean of Students position at South Bend-Ridley High School in 2019. Instead, the school hired C.B. Gavin for both positions, a man with significantly less experience, less qualifications, and a felony criminal record. Do I understand correctly that Mr. Gavin is still employed at South Bend? Yes, Your Honor. Yes. And as I understand, it's still the Dean of Students at South Bend-Ridley High School. Even though all of these unfavorable facts about him have, at a minimum, come out in this litigation? Yes, I don't know if they've, it's not like we've ran to the media with this. We certainly haven't publicized it beyond this case, but you are correct. I have to believe they know it. When a white male brings a discrimination claim, a plaintiff under formella, which is a Seventh Circuit case, when a plaintiff is not traditionally a disadvantaged class, needs evidence either of circumstances suggesting the employer was inclined invidiously to discriminate against whites, or failing that, of something fishy about the facts at hand. We believe that, in this case, Your Honors, the pond was stocked with fishy facts. First, Dr. Spells, the superintendent at the time, interviewed and then the candidates for the Corporation Director of Athletics, and then no background check was performed on... Can we go a step before that, actually?  This is something that you argue in your brief that was fishy. Actually, you don't argue it directly, but it certainly seems to be an inference, that Dr. Spells changed the job description. And, you know, when he's doing this Corporate Director of Athletics hiring now, and now it's only a bachelor's degree that's required, and one other thing that I cannot recall right now. I think, objectively, a driver's license, I believe. There we go. Is it your position that he changed this to help Gavin, specifically? I don't have any direct evidence of that, specifically. Okay, then is there anything tying this change in the job description to discriminatory intent? I think that is one factor that this court should analyze. I don't think that alone would be sufficient, but I think that is one factor, because you have... Mr. Gavin was hired in 2017 on two previous occasions in 2007. In 2013, the job description for the Corporation Director of Athletics... How is that evidence of pretext? If you don't have anything tying that to discriminatory intent... I think, again, at this point, that fact, taken with other facts, particularly the fact that the school corporation did not follow its policy regarding background checks on Mr. Gavin... Can I interrupt you at one point? Sure. And then let's go back to these other questions. Is it your position that it's a material disputed issue of fact whether a background check was required for internal promotions? I mean, because it seems clear that everybody agrees there was no background check, but the dispute seems to be whether there is just this across-the-board requirement for background checks, even if somebody is an internal promotion, or whether internal promotions are exempt. Because nobody is subjected to background checks, as far as I can tell in this record, if they're internally being promoted. Well, Your Honor, the employment policy of South Bend Community School Corporation, the policy specifically states for administrative positions that background... I get that, which is why I'm asking whether your fundamental position is, at summary judgment stage, this is a disputed issue of fact, which is a material one. Yes. I can see evidence on both sides. Yes. And I think, Your Honor, if this court looks at its decision in Rudin or Rudin versus Lincoln Land Community College, which was procedurally exactly what happened, this court reversed the district court's decision granting summary judgment. And in that case, this court stated, we believe the fact that Lincoln Land did not follow its own internal procedures with respect to the hiring process for the position points to discriminatory motivation. Did Groves have a background check? No, because, Your Honor, great question. If you look at the document 30-19, or document 30-32, which was C.B. Gavin's offer of employment, it states that he had to complete the forms for employment background and a criminal history background. So that was after he was offered the... Correct. Correct. Yes. So after the decision was made not to hire Groves. Correct. Yes. And Dr. Spells stated in his deposition, which was cited too, that he would not have hired Mr. Gavin had he known of Mr. Gavin. How does that go to Spells's decision, a discriminatory decision? Well, if the school would have followed their policy, in this case, after Mr. Gavin had been offered the position, presumably they would have withdrawn the position, or the offer to Mr. Gavin. Do you have enough, though, on the theory that we're talking about to get to summary judgment on the policy without coming forward of at least another instance where there was an internal promotion or internal transfer where a background check was run? Because the way the summary judgment record reads to me is, here's the policy, but then there's testimony that says, yeah, yeah, yeah, but that's with respect to hiring somebody on the outside. Once they're in and they're transferring or they're being promoted, we don't do background checks. Well, I believe that is an issue of fact because the policy doesn't... But did you come forward with an example of why... Of a separate instance, you mean? Yeah, why then did you run a background check on Jane Doe and John Smith? We don't have evidence of that and certainly didn't cite to any. We're relying specifically on the facts at hand. And again, I think that the offer letter to Mr. Gavin is inconsistent with Dr. Spells's testimony. And I think, again, the Ruddin decision is right on point with... It assumes that something has been done contrary to policy. And I think what Judge Scudder is saying and what I'm concerned about is that if you flesh out the full policy, it means background checks from the outside. But once you've gotten yourself on the inside and you're an internal promotion or transfer, the policy isn't one for background checks. So that's why I'm concerned about whether there's a question of fact, whether supported or not, a whole different issue on what the full nature of the policy was. So I think that's at least a distinction from the Ruddin case. So again, the written policy, which was cited to in our brief docket entry 30-31, does not make an exception for internal hires. It just doesn't say anything about them one way or the other. Correct. Right. I understand your argument that they didn't follow the policy and you think they should have, but are you disputing that the school didn't know? They're saying, we didn't know about Gavin's background, the school district. Are you disputing that? Are you saying that they did know about his convictions and purposely avoided running a background check to bring them up? Certainly haven't. We would have cited to that had we been aware of that. We don't have any evidence that they knew and covered it up. Our position is that had a background check been run, we believe it would have revealed his criminal history, but it wasn't done. But all that happened after the employment decision, and you're trying to show that the employment decision itself was infested with racial discrimination. Well, I don't believe that the employment decision would have been final until the background check would have been performed. Obviously, an offer was made, but it was subject to, as you read in his offer letter, verification of his transcripts, licenses, record of his previous experience, and an acceptable background check. Mr. Otis, can you spend a couple minutes before you wrap up on the Riley High School position? Sure. That Dean of Students position. The question I have there is, as I read the record, it looked to me like the principal, Mr. Henderson, was the one that shouldered or bore the ultimate responsibility on that? Under Indiana law, they make a recommendation and the school board ultimately hires, but you are correct. I believe Mr. Henderson ultimately was. Okay. And what evidence is there in the summary judgment record, in your view, that would suggest, probably more likely with Henderson than the school board, but that Henderson was engaged in impermissible discrimination? Well, I believe, again, the same argument would apply that South Bend Community School Corporation did not follow its policy again, and had it followed its policy to begin with, one of the arguments that South Bend, the school corporation... Is that on the background check? Correct. And one of their arguments was that by the time Mr. Gavin was hired for Dean of Students, he had had two years of experience as the Corporation Director of Athletics, which gave him administrative experience that we argue he would not have had had they followed their own policy. I mean, that may be true, but the 2019 decision was also, if I'm remembering correctly, the one where the committee interviews nine people and Mr. Groves winds up ninth out of nine in terms of the scoring of the committee. I don't remember exactly where his ranking was, but nonetheless, they're still obligated to perform these background checks on their employees. And I would also like to point out... Who are hired for the other three Dean of Student positions at the other three high schools? That's a great question. And I would argue that I don't believe there was an extreme difference in the qualification of those candidates versus Mr. Groves, where we believe there is an extreme difference in qualifications with Mr. Gavin. Do we have any case law that you know of that says a difference in qualifications full stop is enough? It's an extreme difference is the standard in this circuit. I believe by the Supreme Court as well. And one of the issues that we take with the district court decision was that it seemed to... Their analysis, the court's analysis, stopped at the job requirements and didn't consider the employment history of the individual. The only thing the district court emphasized, did it not, was the views on how, at least with respect to the first position, how well or not well Mr. Groves did in his interview. That was one factor that the court... Dr. Spells found it off-putting that he was talking about firing 24 people while he was at Adams High School, etc. Correct. And what we cite to in our reply brief was the Levin decision, that denied summary judgment for an employer where, if you look at Mr. Groves' annual reviews, they were entirely inconsistent with what Dr. Spells cited to as for the reasons for not hiring Mr. Groves for the Corporation Director of Athletics. I'd like to reserve the remaining time for rebuttal. Sure. Very well. Mr. Hardman, good morning. We'll hear from you. Good morning, Your Honors. Thank you. May it please the Court, Lyle Hardman for the South Bend Community School Corporation. This court just addressed a number of the issues, why the district court should be affirmed. First and foremost, Mr. Otis and Mr. Groves' focus on the difference in qualifications, they did not address the differences that are undisputed, particularly in a summary judgment context, with respect to Dr. Spells' interview of Mr. Groves. But is that interview at the summary judgment stage enough to overwhelm, at least, you know, again, from the procedural point of view, the difference in qualifications between Mr. Groves and Mr. Gavin? Sometimes we see cases where it's relatively evenly balanced, but this is not one that strikes you this way, at least on the face of the record. So why wouldn't it be a jury issue to see whether, in fact, Dr. Spells chose Mr. Gavin for racially neutral reasons, as opposed to choosing Mr. Gavin for reasons that were tainted by race? Thank you, Your Honor. And the reason it is different is because this is a pretext case, and he has to demonstrate that the reasons we gave are pretextual or a lie, as this court well knows, and they have not done that here. So all they've said, essentially, is that Dr. Spells interviews this group, and he basically has a better feeling about Mr. Gavin. I mean, it's a subject. He's not pointing to any particularly objective criteria that caused him to move in Mr. Gavin's direction versus Mr. Groves, or for that matter, any of the other candidates. I disagree with you on that, Your Honor. And the reason I disagree with Mr. – Dr. Spells identified, for instance, the problems with the IHSAA, and Mr. Groves admitted in his deposition testimony, not just the school corporation, but admitted in his deposition testimony that he had to forfeit games while he was the AD at Riley High School – I'm sorry, at Adams High School because of transfer violations. And Dr. Spells wanted to improve the relationship with the IHSAA, and he wanted to put somebody in place who did not have the baggage that Mr. Groves did. So there's no dispute of fact there. And I take it you're not relying at all on any allegations that Mr. Groves was asking for too much money or that it would be cheaper to hire Mr. Gavin? I thought that was disputed in the record. It is disputed. Dr. Spells unequivocally testified that Mr. Groves did ask for more money. Mr. Groves denied that. Mr. Groves, however, did admit in his deposition that he thought that the position paid too little. And Dr. Spells also testified in his deposition that he thought it was inappropriate for Mr. Groves to be raising the issue of compensation at that stage of the interview process. Other problems that Dr. Spells relied on and that Mr. Groves admitted to in his deposition were the issue of the background checks for other employees. And Mr. Groves was dismissive of that concern and criticism in his deposition, but he admitted to it. What do you mean? Say more about that. What do you mean, the background checks? What are you referring to? For hiring coaches. Mr. Groves was allowing coaches to be hired for the South Bend Community School Corporation as new hires who did not have background checks. This goes to the compliance problems they saw with Mr. Groves while he was at Adams, which is also tangentially related to the paperwork problems. You're saying Dr. Spells identified and that Groves is not disputed. Correct. While we're on background checks, does the record show one way or another whether the school district consistently declined to run new background checks in this internal transfer or promotion context? It does not say other than Dr. Spells' testimony on that. We don't have any idea with respect to anyone else that was transferred or promoted internally, in other words, not hired from the outside? Other than Dr. Spells' deposition testimony, we do not. I do note, and this court was correct, that the policy as a whole says you have to have background checks for people appointed to an administrative position, but the policy then also goes on to say that people who have been employed with the school corporation, 20 percent have to have their background checked every year, so that in five years, 100 percent of employees have their background checked. Mr. Otis seems to make a fair point that the policy at least seemed to contemplate that Mr. Gavin would undergo a background check and therefore that it would apply to this internal promotion because it said so in that the hiring was subject to him completing the background check in the letter that he received. I agree with that, but I don't think that creates a genuine issue of material fact because, first of all, there's no evidence that the South Bend Community School Corporation didn't do the background check for an improper purpose or a discriminatory purpose, and Dr. Spells did articulate a legitimate non-discriminatory reason for it. Is there evidence one way or another as to what happened after? Did anybody say, well, we just forgot to do it? There is no evidence in the record. What we do have, though, in the record is the 2007 background check, which didn't show anything. Well, that's what's curious to me. Well, two things. One, if the district is saying we don't run background checks on internal hires, well, Gavin came in in 99. He's getting a background check in 02. Why? He's internal at that point. And 07. Why? He's internal at that point. If I may correct you, Your Honor, his criminal offenses occurred in 99. He was first hired in 2002. So why is he getting the 07 background check? Because he was rehired. That's when he lost his position in 2006. He was rehired by the school corporation in 2007. And then how do they not know in the record that he lost this position if he's getting a new background check because of it? Two different things, Your Honor. Obviously, the South Bend Community School Corporation did know that he was a new hire in 2007 because they did run the background check. That's different, though, whether or not Dr. Spells knew in 2017 that he had lost the position in 2007. Yes, it was in his HR file. And Mr. Otis and Mr. Groves state in their brief that obviously, they claim that obviously Dr. Spells looked at Bill Groves' HR file in detail but failed to do that with C.B. Gavin. But Dr. Spells actually testified that HR had brought up those paperwork issues and the IHSAA violations with Mr. Groves to Dr. Spells as opposed to him focusing solely on those negatives for Mr. Groves. Another question for you. We do have in the summary judgment record that Groves ranked 9 out of 9 when he interviewed for this Dean of Students position. Correct. But we also have in the record that Gavin ranked 8 out of 9. He did. Why is that not something for a reasonable jury to consider? Because as the district court found with respect to the Dean of Students position, that's a retaliation claim. And Mr. Henderson, the principal at Riley High School at the time, unequivocally testified he wasn't even aware of the claim. The earlier claim. Correct, the earlier claim. And doesn't he also testify that actually Mr. Gavin wasn't his first choice? Anyway, there was somebody else who was his first choice and that person I think flunked a background check if I'm not mistaken. You are correct on that, Your Honor. And then there was somebody else and I can't remember why they washed out, but they did too. And I gather of the pool of nine people who interviewed, that was being sprinkled across the four different schools. So maybe some people were unavailable. Correct. Let me ask you this though. There's another issue that we haven't touched on about Mr. Gavin and he compares poorly to Mr. Groves this way too, and that's the teaching certificate or permit. He's in a position that seems to require a teaching qualification as a teacher and yet that gets sailed by as well. He did have a temporary permit when he was a teacher at the South Bend Community School Corporation and again, I don't know... But he doesn't by the time he gets the Dean of Students position, does he? He does not, but the Dean of Students position did not require it to him to have a teacher's license and that's in the job description. And the same with the corporate director of athletics? That's correct, Your Honor. Okay. Did anything happen with respect to Mr. Gavin after it was learned that the criminal background check was missed? It was not. And I actually do know the reason why. And the reason why was the South Bend Community School Corporation had been happy with his performance as the Dean of Students and as the corporate director of athletics and thought that he had earned a shot at redemption. So is that in the record anywhere? That is not in the record. Dr. Spells, I know, testified, didn't he, that had he known about the criminal background, he would not have supported any promotion. Correct. If Dr. Spells unequivocally testified that if he was aware of the criminal convictions, Mr. Gavin would not have been promoted to the CDA position. And then what you're telling us outside the record, is that once that came to the fore, he resigned. Dr. Spells was gone. Dr. Spells was gone, but Gavin resigned. No, the CDA position was eliminated as part of the restructuring. That was an anti-bureaucracy restructuring. Yeah, yeah, yeah, but what about it that he got the job at Riley High School, right? Correct. And today? He is still, he is the athletic director at Riley High School. Okay. Okay. Very well. Anything further, Mr. Hardin? Briefly, Your Honor, with respect to the retaliation claim as to the elimination of the AD positions, that was part of a restructuring because of the budgetary shortfalls that the South Bend Community and School Corporation. Therefore, that can't support a claim of pretext. So, in short, Your Honors, Mr. Groves hasn't produced any direct evidence of pretext or discrimination, and he hasn't produced any evidence to support the claim of invidious discrimination or that the South Bend Community and School Corporation's actions were done as a lie. And I would also like to refer the court to Hagg v. Thompson Distribution Company, which is 436 F. 3rd, 816, 7th Circuit, 2006. And if I may read very briefly from the case, this court found that Mr. Brown failed to survive summary judgment because he had admitted to his misconduct, even though it wasn't in his HR file. And this court specifically said, quote, in making these arguments, however, Brown does not comprehend his legal burden. Brown must establish that Thompson Distribution lied about its reasons for firing him, not that Thompson Distribution was wrong for firing him for the reasons it gave. By admitting to the conduct at issue, swearing, yelling, and returning the boilers, Brown is left attacking Thompson Distribution's leadership in business judgment. That will not suffice. And for these reasons, the district court should be affirmed and the summary judgment upheld. Thank you, Your Honors. Thank you. Thank you, Your Honors. I'd first like to point this court to the Levin case that we cited in our reply brief. And in Levin, the employer used post hoc decisions to support terminating an employee, Mr. Levin. And they were entirely inconsistent with his most recent evaluation. And the district court stated that summary judgment was not appropriate at that point. If you look at Mr. Grove's most recent evaluation prior to not receiving the Corporate Director of Athletic position, every ranking was a five out of five. Every comment was a positive comment regarding Mr. Grove's. Mr. Grove's always puts sportsmanship first and fair play first. I have witnessed on several occasions where Mr. Grove's has counseled and or praised coaches and athletes on their sportsmanship. Further, the principal stated, Mr. Grove's always reported any athletic issues to Mr. Seitz, Mr. Whitaker, and the IHSA when needed. There was nothing negative regarding Mr. Grove's handling of IHSA matters. And Dr. Spells identified issues that he had with Mr. Grove's employment while he was at South Bend Community School Corporation. But it seems Dr. Spells put his head in the sand when it came to looking at Mr. Gavin's employment history, both being terminated on multiple occasions and his criminal history. And so for those reasons, we believe that this is entirely consistent, the factual scenario, with the Rudin v. Lincoln Land Community School. Can I ask you, I mean, with all of this, I mean, the ultimate question, as we've said in a number of cases, including Ortiz, this has to be worse than a bad decision. It has to be worse than favoritism of a friend. There has to be something that tells us this is actually racial discrimination against Mr. Grove's, done because he is white. Everybody has a right, but racial discrimination laws protect everybody. But what's your best evidence that this actually stems from racial considerations versus just poor judgment or favoritism or somebody rubbing somebody the wrong way or all of these other things that happen in the real world? Your Honor, I don't think it's one specific argument because I think if you take them separately and if there was only one of those scenarios available, I don't know that Mr. Grove's case would survive, but I believe when you take all of the fishy circumstances together, from failing to perform an employment and criminal background check on Mr. Gavin... No, I understand what they are, but why do they add up to race? Well, I believe... Or why could a rational jury find it, I guess is the better way to put it. I think I would rely specifically on the Rudin decision from this court that states, this leaves us with the distinct impression that the committee's role, while ultimately consultatory, was entirely abandoned in the hiring process. This abandonment of its hiring policies is circumstantial evidence of discrimination, and therefore this court reversed  So on that basis, we'd ask the court to reverse the decision. Thank you. Thank you. Very well. Thanks to both counsel. We'll take the case under advisement.